1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**CESARIO G. BENITEZ,**

Petitioner,

**v.**

**SCOTT FRAUENHEIM, Warden,**

Respondent.

**Case No. 1:15-cv-00091 DAD MJS (HC)**

**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Jeffrey White of the office of the California Attorney General. Respondent declined magistrate judge jurisdiction. (ECF No. 8.)

**I.    Procedural Background**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his conviction by jury trial on February 3, 2012, for murder with enhancements for use of a firearm in commission of the offense. (Clerk's Tr. at 306-07.) On March 6, 2012,

Petitioner was sentenced to an indeterminate prison term of fifty (50) years to life. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District on November 20, 2012. (Lodged Doc. 1.) On March 4, 2014, the appellate court affirmed the conviction. (Lodged Doc. 4.) Petitioner sought review by the California Supreme Court on April 15, 2014. (Lodged Doc. 5.) The petition for review was denied on June 12, 2014. (Lodged Doc. 6.)

Petitioner filed his federal habeas petition on January 20, 2015. (Pet., ECF No. 1.) Petitioner raised the following four claims for relief: (1) that the trial court erred in allowing evidence of his immigration status; (2) that the court erred in allowing propensity evidence relating to Petitioner's dispute with a man named Richard; (3) that the trial court erred in failing to instruct the jury on the defense of another; and (4) that Petitioner's trial counsel was ineffective for failing to move to exclude certain statements made by Petitioner and by failing to request limiting instructions as to other offenses committed by Petitioner.

Respondent filed an answer to the petition on November 12, 2015. (Answer, ECF No. 12.) Petitioner filed a traverse to the answer on May 8, 2015. (Traverse, ECF No. 14.)

## II.    Statement of Facts[1]

TRIAL EVIDENCE

On March 7, 2011, multiple people were present at the home of Israel Lopez's brother-in-law, located on K Street in Parlier.[fn2] Among those present were Geralee Rojas, Israel Lopez, Guadalupe Hernandez, defendant and several others. Defendant and Hernandez had their own beds at the K Street residence, whereas Rojas and Lopez did not live there at the time of the shooting.

**FN2**: We will refer to this location as the "K Street residence."

Testimony of Geralee Rojas

Sometime after Rojas arrived, she went to sit on a bed. Lopez

---

[1] The Fifth District Court of Appeal's summary of the facts in its March 4, 2014 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

came into the room, grabbed Rojas's purse and tried to toss it onto the ground. Rojas grabbed her purse from Lopez's hands, and several items fell to the floor. Rojas asked what Lopez was doing and told him not to touch her things. Lopez told Rojas that she was not supposed to be there. A man nicknamed "Chelis" came into the room and asked Rojas if she was alright. Chelis told Lopez to go outside. Lopez left, but returned "a couple minutes" later.

When Lopez returned, he began to tell Rojas she was "pretty," and that she would never know "what a good woman" she "could be." Rojas told Lopez to leave her alone. Lopez grabbed some nearby shells from seeds Rojas had been eating and threw them at her. Again Rojas told Lopez to leave her alone. Lopez laughed and told her she was beautiful when she was mad.

Several people walked in, having heard the argument. Lopez and two others left the room and went into the kitchen. Rojas began chatting with defendant. Lopez then returned and "started up again" with Rojas. Defendant smirked at Rojas and shook his head, suggesting Rojas should not pay attention to Lopez.

Eventually, "somebody" came in and told Lopez "something" about his wife that made Lopez angry. Then, Lopez told Rojas that she was "probably going to die an old, lonely woman ...."[fn3] Defendant told Lopez to leave Rojas alone, and Lopez told defendant to mind his own business.[fn4]

**FN3**: Rojas initially testified that she did not recall what Lopez had said to her. On cross-examination by defense counsel, Rojas testified to the substance of what Lopez had said.

**FN4**: Sheriff's Deputy Hector Palma testified that he interviewed a houseguest nicknamed Chaka. According to Chaka, Lopez also said, " 'So then do you want something with me or what?' " to defendant. Defendant then said, " 'It is better if you left,' " to which Lopez replied, " 'Well, no one is going to tell me when to leave. Even if I don't live here, you can't tell me to go.' " Defendant said that they would tell the owner of the home to have Lopez leave.

At this point, Rojas saw that Lopez was unsteady on his feet and perceived him to be "very intoxicated." Rojas did not recall whether Lopez then left for the kitchen or remained in the vicinity.

Defendant told Rojas not to pay any attention to Lopez. Defendant then stood up and told Rojas he was going to go to bed. Lopez came back into the room, and defendant sat back down. Lopez told Rojas that "his best friend is with his wife now." Lopez said he "has been high for a couple days" and "doesn't know why ... he is still standing here breathing."

Defendant eventually repeated that he was going to bed. Lopez approached defendant and leaned forward. Lopez then stepped back, said he was leaving and that everyone could "go to hell," and walked out of the room. Defendant looked at Rojas and smiled. Rojas shook her head and rolled her eyes. Rojas asked whether defendant had to go to work the next day. Rojas did not recall what defendant's response was. Defendant then said, "'I'm going to go lay down already,'" and walked to his bed. Rojas

closed a curtain nearby, turned up the radio and began to pick up her things.

Testimony of Guadalupe Hernandez

Guadalupe Hernandez testified that defendant retrieved a gun near the time he got into the argument with Lopez. Defendant wrapped the gun into a black handkerchief and placed it in his pocket.[fn5] Defendant then went outside.

FN5: Hernandez testified that he "think[s]" it was a handkerchief "or something like that."

In an interview with law enforcement after the shooting, Hernandez said he heard a gunshot "right after" defendant, Lopez and Gustavo left the house.[fn6] At trial, however, Hernandez testified that he did not hear a gunshot because the television was loud.

FN6: One of defendant's roommates, Jose Perez, testified that he heard a gunshot "just as soon as" defendant "went outside."

Post Shooting

That evening, Police Officer Omar Khan was dispatched to the K Street residence on a report that a person was "injured." Officer Khan was the first officer on scene. He found Lopez lying on his back in the front yard, unconscious and bleeding. According to the coroner, Lopez had sustained a gunshot wound to the left side of his head "essentially in the temple area." Rojas testified that defendant was no longer at the K Street residence when police arrived.

At the hospital, Lopez was "technically brain dead" and placed on life support so his organs could be recovered for transplantation.

A pathologist observed no powder grains deposited around Lopez's bullet wound. The absence of these deposits — known as stippling — indicated Lopez was shot from a distance equal to or greater than 18 inches. The pathologist testified that Lopez's wound appeared to be a "distant" gunshot wound, inconsistent with the close proximity inherent in a physical struggle.[fn7]

FN7: This would tend to contradict defendant's claim that he shot Lopez during a physical struggle. Defendant's version of events, as reflected in his interview with police, is set forth later in this opinion.

Defendant was taken into custody in the driveway of a residence in New London, California. Law enforcement searched defendant's room. A .22-caliber revolver wrapped in a black handkerchief, along with ammunition, was found there.

Defendant's Interview with Law Enforcement

Law enforcement conducted a recorded interview of defendant, which was played for the jury.

Defendant said he smoked marijuana and methamphetamine the

day of the shooting, and that Lopez had smoked marijuana. Defendant said that Lopez twice touched Rojas's breasts. Defendant told him to stop, and Lopez challenged him to a fight. But defendant said his fight with Lopez was not about Rojas. Rather, the fight was about the fact that Lopez did not like defendant very much.

Lopez told defendant he wanted to fight him because he was " 'the toughest one around here.' " Lopez told defendant he would " 'f**k' " him " 'up' " and " 'beat the shit' " out of him. Defendant was "fed up" with Lopez because he had humiliated him "so many times." The two went outside to fight. Lopez's friend, Ramirez, accompanied them outside, and defendant thought they were going to attack him. Defendant came out of the house with a gun because he thought Lopez might kill him.

Defendant said Lopez attacked him first. Defendant felt enraged and lost control as they struggled. He pulled out his gun and shot Lopez. Defendant said it was "[a]nger just at that moment and nothing was planned ...."

<u>Defendant's Confrontation with "Richard" Before the Shooting</u>

A man named Jose Perez testified that on the morning of the shooting, defendant got into an argument with an individual named "Richard." Defendant "complained" to Richard because "he had called him out on his mother...." When asked if defendant was upset about Richard being at the residence, Perez testified: "Uh, maybe, maybe, because he was just there eating and because he didn't live there." It appeared as if Richard and defendant were going to fight.

Another man named Jose Padilla also testified regarding defendant's interaction with Richard. Padilla testified that an incident involving "Richard" occurred the day before the shooting.[fn8] Richard was outside the house, "visiting." Padilla was cooking and asked Richard if he wanted to have something to eat. Richard came inside to eat, and defendant began questioning him about "something that had occurred almost 20 years ago." The "owner"[fn9] told Richard to leave. Afterwards, defendant had his gun in his pocket, looked through the window, and said he was going to kill Richard and his friend.

**FN8**: Padilla and Perez appear to have been referencing the same incident. However, Perez said the incident occurred the morning of the shooting, and Padilla said it occurred the day before.

**FN9**: Presumably, the owner of the residence where the shooting occurred.

Padilla testified that, at some point, defendant showed him a gun that looked like the same gun used to shoot Lopez. Padilla said, "'Put that away. Don't be so hotheaded. Put it away.' "Defendant placed the gun on Padilla's bed, looked out the window and said, "'Tell Richard to come over. Tell Richard to come over.'" When defendant left the gun on his bed, Padilla threw it over to defendant's bed and said, " 'Why are you leaving this here, you crazy asshole?' "

During an interview with police, defendant was asked about Richard. Defendant said, " 'Oh, I wanted to get him too ....' " He said that

1
2

Richard did not like him, and that they had longstanding "problems," and that they had fought once years before. Defendant denied displaying his gun to Richard or anyone else.

People v. Benitez, 2014 Cal. App. Unpub. LEXIS 1573, 1-9 (Mar. 4, 2014).

3
4

## II.    Discussion

### A.    Jurisdiction

5
6
7
8
9
10
11
12
13

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

### B.    Legal Standard of Review

14
15
16
17
18
19

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

20
21
22
23
24

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

25
26

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

27
28

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.   Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).   The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).   For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court.   Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).   A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable."   Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations."   Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."   Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

1  (2009), quoted by Richter, 131 S. Ct. at 786.

2  ## 2.    Review of State Decisions

3      "Where there has been one reasoned state judgment rejecting a federal claim,

4  later unexplained orders upholding that judgment or rejecting the claim rest on the same

5  grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

6  "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

7  (9th Cir. 2006).  Determining whether a state court's decision resulted from an

8  unreasonable legal or factual conclusion, "does not require that there be an opinion from

9  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

10  "Where a state court's decision is unaccompanied by an explanation, the habeas

11  petitioner's burden still must be met by showing there was no reasonable basis for the

12  state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

13  not require a state court to give reasons before its decision can be deemed to have been

14  'adjudicated on the merits.'").

15      Richter instructs that whether the state court decision is reasoned and explained,

16  or merely a summary denial, the approach to evaluating unreasonableness under §

17  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

18  or theories supported or, as here, could have supported, the state court's decision; then

19  it must ask whether it is possible fairminded jurists could disagree that those arguments

20  or theories are inconsistent with the holding in a prior decision of this Court."  Id. at 786.

21  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

22  was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

23  authority to issue the writ in cases where there is no possibility fairminded jurists could

24  disagree that the state court's decision conflicts with this Court's precedents."  Id.  To put

25  it yet another way:

26
27
28

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

1  Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

2  are the principal forum for asserting constitutional challenges to state convictions." Id. at

3  787. It follows from this consideration that § 2254(d) "complements the exhaustion

4  requirement and the doctrine of procedural bar to ensure that state proceedings are the

5  central process, not just a preliminary step for later federal habeas proceedings." Id.

6  (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

7  ### 3.  Prejudicial Impact of Constitutional Error

8  The prejudicial impact of any constitutional error is assessed by asking whether

9  the error had "a substantial and injurious effect or influence in determining the jury's

10  verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

11  U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

12  state court recognized the error and reviewed it for harmlessness).  Some constitutional

13  errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

14  Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

15  (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

16  assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

17  Strickland prejudice standard is applied and courts do not engage in a separate analysis

18  applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

19  v. Lamarque, 555 F.3d at 834.

20  ## III.  Review of Petition

21  ### A.  Claim One: Admission of Evidence of Immigration Status

22  Petitioner claims that the trial court erred in allowing the prosecution to admit

23  prejudicial evidence relating to his immigration status.

24  ### 1.  State Court Decision

25  Petitioner presented this claim by way of direct appeal to the California Court of

26  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

27  appellate court and summarily denied in a subsequent petition for review by the

28  California Supreme Court. Because the California Supreme Court's opinion is summary

9

in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the California Court of Appeal explained:

I. EVIDENCE OF DEFENDANT'S "PROBLEMS" IN "WASHINGTON" AND RETURN TO MEXICO

On appeal, defendant claims that the court erred in admitting impeachment evidence that defendant had, prior to the shooting, experienced "problems" involving a gun and was "returned" to Mexico. We disagree.

A. ADDITIONAL FACTS

In his interview with police, defendant said he was a policeman in Mexico prior to coming to the United States at age 23. He said, "I've been over here all my life, since I was 23 years old. I left all that since I was 23 years old ... and I came over here and I haven't gone back. I haven't been back there." The interview, including this portion about leaving Mexico and never returning, was offered into evidence by the prosecution.

The prosecution also introduced evidence contradicting defendant's out-of-court claim that he never returned to Mexico. A portion of the prosecutor's examination of Guadalupe Hernandez is set forth below:

"[PROSECUTOR]: And you told the detectives that [defendant] told you that he had problems in a casino in Washington [s]tate for having a gun and he was returned to Mexico, correct?

"[HERNANDEZ]: Uh, he had told me that.

"[PROSECUTOR]: And he told you that he didn't know that there were sensors in the casino that alert to the fact that there's a gun, correct?

"[HERNANDEZ]: Yes."[fn10]

**FN10**: The prosecutor also elicited testimony from Detective Palma confirming Hernandez's testimony.

B. ANALYSIS

Defendant argues that because he did not testify, it was improper to admit hearsay evidence of a prior offense to attack his credibility. The Attorney General contends the evidence was admissible under Evidence Code section 1202. We agree with the Attorney General.

1. The Evidence is Admissible Under Evidence Code Section 1202

Evidence Code Section 1202 provides, in part:

"Evidence of a statement or other conduct by a declarant that is inconsistent with a statement by such declarant received in evidence as hearsay evidence is not inadmissible for the purpose of attacking the credibility of the declarant though he is not given and has not had an opportunity to explain or deny such inconsistent statement or other conduct...."[fn11]

**FN11**: This statute applies when the defendant is the nontestifying hearsay declarant. (See People v. Jacobs (2000) 78 Cal.App.4th 1444, 1449-1453.)

By its plain language, Evidence Code section 1202 contradicts defendant's claim on appeal that the prosecution improperly used hearsay evidence to attack his credibility.

Defendant disputes this conclusion, noting that the prosecution was the proponent of both pieces of evidence (i.e., defendant's statement and the evidence impeaching it). Defendant argues this fact is relevant under People v. Fritz (2007) 153 Cal.App.4th 949, 956 (Fritz). In Fritz, the Court of Appeal held that when the prosecution offers the defendant's hearsay statement into evidence, it has "no right to impeach it." (Ibid.)

Another appellate case contradicts that portion of Fritz. In People v. Osorio (2008) 165 Cal.App.4th 603, 617 (Osorio), the Court of Appeal held that Evidence Code sections 785 and 1202 "allow a prosecutor to use a prior inconsistent statement to partially impeach a hearsay statement the prosecutor had previously introduced." (Osorio, supra, at p. 617.) On this issue, Osorio and Fritz seem to conflict.

We conclude Osorio is controlling on this point. The Supreme Court has quoted the relevant Osorio language favorably, and has noted that Osorio's "result was ... correct." (People v. Blacksher (2011) 52 Cal.4th 769, 808.) Therefore, we too hold that a prosecutor may "use a prior inconsistent statement to partially impeach a hearsay statement the prosecutor had previously introduced." (Osorio, supra, 165 Cal.App.4th at p. 617; Blacksher, supra, 52 Cal.4th at p. 808.)

Moreover, we note that cases like People v. Mayfield (1997) 14 Cal.4th 668 prohibit eliciting irrelevant testimony on cross-examination merely for the purpose of contradicting it. (Id. at p. 748.) But here, the evidence being impeached was defendant's statement to law enforcement. The prosecution did not offer defendant's statement to law enforcement "merely" to contradict it. The statement contained highly relevant evidence including defendant's admission that he shot Lopez.

As a result, the plain language of Evidence Code section 1202 provides a clear answer to the question we face. The evidence of defendant's prior inconsistent hearsay statement "is not inadmissible for the purpose of attacking [his] credibility" (Evid. Code, § 1202) even though his choice not to testify left him without an opportunity to explain or deny the inconsistent statement. (Ibid.) We therefore reject defendant's contention that the evidence was inadmissible because he "was not a witness and did not testify."

2. The Probative Value of the Evidence was not Substantially Outweighed by its Prejudicial Effect

Defendant argues the evidence was inadmissible for another reason: its probative value was substantially outweighed by its prejudicial effect. (See Evid. Code, § 352.) Specifically, defendant contends that the evidence of his "problems" in Washington was not relevant and was highly prejudicial.

a. The Law

"[C]ollateral matters are admissible for impeachment purposes ...." (People v. Lavergne (1971) 4 Cal.3d 735, 742.) However, the collateral character of the evidence reduces its probative value. (Ibid.) Therefore, trial courts must determine whether the probative value of the evidence is substantially outweighed by the probability its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issue, or of misleading the jury. (Evid. Code, § 352.) This determination is left to the discretion of the trial court. (People v. Mayfield, supra, 14 Cal.4th at p. 748 ["the trial court has discretion to admit or exclude evidence offered for impeachment on a collateral matter"].)

"As with all relevant evidence ... the trial court retains discretion to admit or exclude evidence offered for impeachment. [Citations.] A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (People v. Rodriguez (1999) 20 Cal.4th 1, 9-10.) " '[T]he discretion to be exercised is that of the trial court, not that of the reviewing court. Thus, even if the reviewing court might have ruled otherwise in the first instance, the trial court's order will yet not be reversed unless, as a matter of law, it is not supported by the record.' [Citation.]" (People v. Tuggles (2009) 179 Cal.App.4th 339, 361.)

Under this deferential standard of review, appellate courts have upheld admission of evidence regarding "collateral fact[s]" that "had no bearing on any issue in the trial ...." (E.g., People v. Morrison (2011) 199 Cal.App.4th 158, 165.)

b. Discussion

Here, defendant argues his "residency status was not relevant to any issue in the case[]" including his credibility, citing Hernandez v. Paicius (2003) 109 Cal.App.4th 452[fn12] (Hernandez). We disagree.

**FN12**: Disapproved on another point by <u>People v. Freeman</u> (2010) 47 Cal.4th 993, 1006, fn. 4.

The evidence in question was relevant to defendant's credibility. For this reason, <u>Hernandez</u> is inapposite. In <u>Hernandez</u>, the Court of Appeal held that evidence of a civil plaintiff's residency status should have been excluded because it was not relevant to the issues at trial. (<u>Hernandez</u>, *supra*, 109 Cal.App.4th at p. 460.) Conversely, the evidence here that defendant "was returned to Mexico" was relevant to his credibility because it contradicted his claim that he had not "been back" to Mexico since he was 23. (Evid. Code, § 780, subd. (e).)

Defendant contends that even if the evidence is relevant, it was too prejudicial. Defendant largely ignores the court's efforts to minimize any prejudice. The court proposed to the parties the possibility of permitting testimony that defendant had been "returned to Mexico" without reference to defendant's "immigration status" or "deportation." The testimony ultimately conformed to these guidelines. In sum, the court took the proper approach in admitting this relevant evidence while taking steps to mitigate any prejudicial effect. We cannot say the court's decisions were "arbitrary, capricious, or patently absurd," (<u>see</u> <u>People v. Rodriguez</u>, *supra*, 20 Cal.4th at pp. 9-10) and therefore find no prejudicial error.

3. <u>Any Error Was Harmless</u>

Moreover, we conclude the admission of the impeachment evidence, even if it had been error, was harmless under <u>People v. Watson</u> (1956) 46 Cal.2d 818.

At trial, it was undisputed that defendant had shot Lopez. Defendant's credibility was therefore only relevant as to the facts surrounding a potential self-defense theory. On this point, the prosecution's evidence contradicting defendant's version of events was overwhelming.

Defendant claimed he and Lopez "struggled and that's when [he] pulled out the ... gun ...." Defendant said he and Lopez were stuck together when he fired. But the pathologist testified that the physical evidence (i.e., lack of stippling) showed Lopez had been shot from a distance inconsistent with the close proximity inherent in a physical struggle.

Moreover, much of defendant's own description of his state of mind comports with killing out of anger rather than self-defense. In the transcript of defendant's statement given to the jury,[fn13] the following exchange occurred:

"[DETECTIVE:] But look you already have a gun, you stay in the house and if he doesn't do anything to you inside the house, you would still be cool and calm.

"[DEFENDANT:] Yeah, I know officer, I know. But when you're enraged ... hey.

"[DETECTIVE:] You lost control.

"[DEFENDANT:] Yes, I lost control."

FN13: The parties stipulated that the court reporter need not report the audio as played for the jury because "the jurors ha[d] each been provided with a copy of the transcript and the transcript [was] made a part of the record in this case[.]"

Elsewhere, defendant described the shooting as an "outburst" and "[a]nger just at that moment ... nothing was planned ...." Defendant said Lopez had it coming because defendant was "fed up with him," and Lopez had humiliated defendant so many times. Defendant admitted what he had done "wasn't right," but that he "couldn't take it anymore ...."

We conclude any error in admitting the impeachment evidence was harmless.[fn14]

FN14: Defendant also contends the evidence that his prior arrest involved possession of a gun was unduly prejudicial because it painted him as a "gun-tot[er]." We conclude that any error in this regard was not prejudicial. The vague evidence of defendant's prior "problem" involving a gun was not the only evidence that defendant was a "gun-toter." Indeed, far more direct evidence was offered on the issue. Hernandez testified that defendant "always carried his gun." No objection was made to this testimony. Thus, even if the court had excluded evidence that defendant's prior arrest involved possession [*19] of a gun, the jury would still have been exposed to evidence that defendant routinely carried a gun. We therefore find no prejudice resulting from the admission of evidence that defendant's prior arrest involved gun possession.

People v. Benitez, 2014 Cal. App. Unpub. LEXIS 1573 at 9-19.

### 2.    Analysis

To the extent that Petitioner contends that prejudicial evidence of his immigration status was permitted under California state evidentiary law, his claim fails because habeas corpus will not lie to correct errors in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

With respect to Petitioner's due process claim, the United States Supreme Court has held that habeas corpus relief should be granted where constitutional errors have rendered a trial fundamentally unfair. Williams v. Taylor, 529 U.S. 362, 375, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). No Supreme Court precedent has made clear, however, that admission of irrelevant or overly prejudicial evidence can constitute a due process violation warranting habeas corpus relief. See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) ("The Supreme Court has made very few rulings regarding the

1  admission of evidence as a violation of due process. Although the Court has been clear

2  that a writ should be issued when constitutional errors have rendered the trial

3  fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or

4  overtly prejudicial evidence constitutes a due process violation sufficient to warrant

5  issuance of the writ." (citation omitted)).

6  Even assuming that improper admission of evidence under some circumstances

7  rises to the level of a due process violation warranting habeas corpus relief under

8  AEDPA, this is not such a case. Petitioner's claim would fail even under Ninth Circuit

9  precedent, pursuant to which an evidentiary ruling renders a trial so fundamentally unfair

10  as to violate due process only if "there are *no* permissible inferences the jury may draw

11  from the evidence." Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir 1998) (emphasis

12  in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)). See

13  also Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a

14  heavy burden in showing a due process violation based on an evidentiary decision.").

15  Here, as noted by both Respondent and the state court, the evidence was relevant to

16  Petitioner's credibility as it contradicted Petitioner's statements that he had never

17  returned to Mexico. Petitioner's credibility was at issue in light of his claim that the

18  shooting was result of self-defense, and that he was engaged in a physical struggle with

19  the victim. Accordingly, the evidence was relevant to attack Petitioner's credibility in an

20  attempt by the prosecution to undermine Petitioner's claim that the killing was justified.

21  In any event, the admission of the challenged evidence did not deny Petitioner a

22  fair trial. After a review of the record, this Court finds that the trial court's admission of

23  the testimony would not have had a "substantial and injurious effect" on the verdict.

24  Brecht, 507 U.S. at 623. See also Penry v. Johnson, 532 U.S. 782, 793-96, 121 S. Ct.

25  1910, 150 L. Ed. 2d 9 (2001). First, the while the statements were made, there was no

26  evidence presented regarding Petitioner's immigration status.

27  Furthermore, strong evidence supported a finding of Petitioner's guilt. Several

28  witnesses observed the interaction between the victim and Petitioner. Guadalupe

1   Hernandez testified that just prior to the shooting she observed Petitioner retrieve his

2   gun and wrap it in a black handkerchief. Petitioner, in his interview with law enforcement

3   admitted that he went outside of the house and fought with victim, and ultimately shot

4   him, although he claimed the shooting was in self defense. After the shooting, law

5   enforcement found a gun wrapped in a handkerchief in Petitioner's room. Also, a

6   pathologist determined that there was no stippling around the gunshot wound, providing

7   evidence that the gunshot was made from a distance, undermining Petitioner's

8   statements that the shooting occurred during a physical altercation.

9        Based on the totality of the evidence including the nature of the prejudicial

10   statements at issue, and strong evidence presented at trial regarding the murder, there

11   is no reasonable probability the verdict would have been different if the subject testimony

12   had not been presented. The California court's rejection of the admission of prejudicial

13   evidence claim was not contrary to nor an unreasonable application of federal law. 28

14   U.S.C. § 2254(d)(1). It is recommended that Petitioner's first claim for relief be denied.

15        **B.    Claim Two – Admission of Evidence of Dispute with "Richard"**

16        Petitioner next contends the trial court erred in allowing evidence of Petitioner's

17   recent dispute with a man named Richard.

18              **1.    State Court Decision**

19        Petitioner presented this claim by way of direct appeal to the California Court of

20   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

21   appellate court and summarily denied in subsequent petition for review by the California

22   Supreme Court. (See Lodged Docs. 1-6.) Because the California Supreme Court's

23   opinion is summary in nature, this Court "looks through" that decision and presumes it

24   adopted the reasoning of the California Court of Appeal, the last state court to have

25   issued a reasoned opinion. See Ylst, 501 U.S. at 804-05.

26        In denying Petitioner's claim, the Fifth District Court of Appeal explained:

27        II. EVIDENCE OF DEFENDANT'S DISPUTE WITH RICHARD

28              Defendant claims the court erred in admitting evidence of his

16

interactions with "Richard" that occurred before the shooting. The Attorney General counters that the evidence was properly admitted as evidence of intent and the absence of self-defense.

"Evidence of other crimes is admissible only if relevant to prove a material fact at issue, separate from criminal propensity. [Citation.]" (People v. Demetrulias (2006) 39 Cal.4th 1, 14.) Intent and lack of justification (e.g., absence of self-defense) are two examples of "ultimate facts" separate from criminal propensity. (See ibid.)

Here, the evidence of defendant's conduct concerning Richard was probative of intent and lack of justification in the shooting of Lopez. At trial, defendant did not dispute that he had shot Lopez. Rather defendant's theory at trial was self-defense. Defendant's statement to police supported this theory. In the statement, defendant admitted to routinely carrying his gun, but claimed he did so for protection. The evidence regarding the dispute with Richard undermined defendant's claim. The testimony indicated that defendant, with his gun in his pocket, said he was going to kill Richard and his friend. There was also testimony that defendant placed the gun on Padilla's bed and asked him to tell Richard to come over. If believed, the evidence suggests that defendant did not carry a gun solely for his "protection." Thus, the evidence of defendant's dispute with Richard was relevant to a material issue apart from criminal propensity. The court did not abuse its discretion in admitting the evidence.

Defendant also claims the court had a *sua sponte* duty to instruct on the limited admissibility of this evidence. However, courts generally do not have a *sua sponte* duty to issue such an instruction. (See People v. Collie (1981) 30 Cal.3d 43, 63-64.) The Collie court acknowledged there "may" be an "occasional extraordinary case" in which a *sua sponte* duty would arise, such as when the evidence of the prior offense is "dominant ... highly prejudicial and minimally relevant to any legitimate purpose...." (Id. at p. 64.) This is not such a case. The evidence of defendant's interaction with Richard was not the "dominant" piece of evidence, nor was it "minimally relevant." Therefore, the court had no sua sponte duty to give the instruction.

People v. Benitez, 2014 Cal. App. Unpub. LEXIS 1573 at 19-21.

### 2.     Analysis

The Court has set forth the relevant law regarding application of federal law to claims that prejudicial evidence was admitted causing a due process violation warranting habeas corpus relief with regard to claim one The same law is here incorporated and applied to the present claim. See Holley v. Yarborough, 568 F.3d at 1101.

Here, even assuming the admission of evidence was improper, Petitioner has not shown that the evidentiary ruling renders the trial fundamentally unfair.  It cannot be said there are *no* permissible inferences the jury could draw from the evidence. Here, the evidence was relevant to show Petitioner's intent and to create an inference that the

17

shooting was not made in self-defense. The evidence was presented to the jury to show that Petitioner recently had made statements that he routinely carries his gun and that he had recently threatened to kill Richard and his friend. Petitioner's credibility was at issue in light of his claim that the shooting was result of self-defense, and that he was engaged in a physical struggle with the victim. Accordingly, as permissible inferences could be made, Petitioner's due process claim fails under federal law. Windham v. Merkle, 163 F.3d 1092, 1102.

Also, as set forth above, this Court finds that the trial court's admission of the testimony would not have had a "substantial and injurious effect" on the verdict. Brecht, 507 U.S. at 623. Strong evidence supported a finding of Petitioner's guilt. While the evidence of Petitioner's prior encounter with Richard was beneficial to the prosecution to show that Petitioner did not act in self-defense, evidence of Petitioner's conduct on the night of the shooting supported such a finding. Petitioner admitted to shooting Lopez, Guadalupe Hernandez testified that she witnessed Petitioner retrieve his gun before exiting the house and confronting the victim; and expert testimony provided evidence that the victim was shot from a distance. The facts provided of the event that occurred on the night of the killing provide strong evidence that Petitioner did not act in self-defense.

Further, to the extent that Petitioner claims that the court erred in not *sua sponte* instructing the jury on the limited admissibility of the evidence, the claim fails. The Supreme Court has held that a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. at 71-72. A claim that an instruction was deficient in comparison to a state model or that a trial judge incorrectly interpreted or applied state law governing jury instructions does not entitle one to relief under § 2254, which requires violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3). Accordingly, to the extent that Petitioner raises state law claims, his claims should be dismissed.

The only basis for federal collateral relief for instructional error is that an infirm

instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. at 71-72; Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); see Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) (it must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment). The Court in Estelle emphasized that the Court had very narrowly defined the category of infractions that violate fundamental fairness, and that beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. 502 U.S. at 72-73.

However, when habeas is sought under 28 U.S.C. § 2254, a failure to instruct on the defense theory of the case constitutes error if the theory is legally sound and evidence in the case makes it applicable. Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006); see Mathews v. United States, 485 U.S. 58, 63, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988) (reversing a conviction and holding that even if a defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, and the defendant requests such an instruction). In this case, Petitioner does not contend that the Court failed to instruct on an element of the crime, or on a specific defense, just whether there should have been an instruction regarding how the impeachment evidence should be admissible only for a limited purpose. Although the instruction was likely appropriate, the Court finds that the failure of the court to provide the instruction would not have had a "substantial and injurious effect" on the verdict. Brecht, 507 U.S. at 623. The evidence did not directly relate to the fact of the incident that occurred on the night of the shooting. The only obvious use of the evidence was for impeachment of Petitioner's credibility as to whether he shot the victim in self defense.

Based on the totality of the evidence including the nature of the prejudicial statements at issue, and strong evidence presented at trial regarding the murder, there

1 | is no reasonable probability the verdict would have been different if testimony was not

2 | presented or if the trial court provided the requested jury instruction. The California

3 | court's rejection of the admission of prejudicial evidence claim was not contrary to nor an

4 | unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). It is recommended that

5 | Petitioner's second claim for relief be denied.

6 | **C.      Claim Three – Failure to Instruct on Defense of Another**

7 | Petitioner next contends the trial court erred in failing to instruct the jury on

8 | defense of another or defense of habitation.

9 | **1.      State Court Decision**

10 | Petitioner presented this claim by way of direct appeal to the California Court of

11 | Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

12 | appellate court and summarily denied in subsequent petition for review by the California

13 | Supreme Court. (See Lodged Docs. 1-6.) Because the California Supreme Court's

14 | opinion is summary in nature, this Court "looks through" that decision and presumes it

15 | adopted the reasoning of the California Court of Appeal, the last state court to have

16 | issued a reasoned opinion. See Ylst, 501 U.S. at 804-05.

17 | In denying Petitioner's claim, the Fifth District Court of Appeal explained:

18 | III. LACK OF INSTRUCTION ON DEFENSE OF ANOTHER/HABITATION

19 | A. THE PARTIES' CONTENTIONS

20 | Defendant next claims the court erred in failing to instruct on
21 | defense of another and defense of habitation. We conclude that neither
   | instruction would have been supported by substantial evidence.[fn15]
22 | Therefore, the court did not err in failing to give the instruction *sua sponte*.

23 | **FN15**: Defendant claims the court erred in failing to instruct on a lesser
   | included offense ("defense of another as a form of imperfect self defense")
24 | and defenses to the crime ("defense of another ... as an alternate form of
   | exculpatory self defense" and defense of habitation). We acknowledge
   | that there are differences between a court's *sua sponte* duty to instruct on
25 | lesser included offenses versus defenses. (People v. Barton (1995) 12
   | Cal.4th 186, 195.) "[A] trial court's duty to instruct, *sua sponte*, or on its
26 | own initiative, on particular defenses is more limited" than its duty to
   | instruct on lesser included offenses. (Ibid.) But there is one commonality
27 | that spans both contexts: there is no *sua sponte* duty to give an instruction
   | that is not supported by substantial evidence. (See People v. Prince
28 | (2007) 40 Cal.4th 1179, 1265 [lesser included offense]; People v. Quintero

(2006) 135 Cal.App.4th 1152, 1165 [defense].) Because we conclude that neither instruction would have been supported by substantial evidence, the distinctions between <u>sua sponte</u> instructional duties in the context of defenses and lesser included offenses are irrelevant to our holding.

B. <u>ANALYSIS</u>

There is no <u>sua sponte</u> duty to instruct on lesser included offenses unless there is substantial evidence defendant is guilty only of the lesser offense. (<u>See</u> <u>People v. Prince</u>, <u>supra</u>, 40 Cal.4th at p. 1265.) Similarly, a court need not instruct on a defense that is not supported by substantial evidence. (<u>See</u> <u>People v. Quintero</u>, *supra*, 135 Cal.App.4th at p. 1165.)

1. <u>The Court had No *Sua Sponte* Duty to Instruct on Defense of Others Because There was No Substantial Evidence Defendant "Actually" Feared Imminent Harm Would Befall Rojas</u>

Imperfect defense of others applies where the defendant kills "in the actual but unreasonable belief he must defend another from imminent danger of death or great bodily injury ...." (<u>People v. Randle</u> (2005) 35 Cal.4th 987, 997, overruled on another ground by <u>People v. Chun</u> (2009) 45 Cal.4th 1172.) Perfect defense of others applies whether the defendant kills in the actual, reasonable belief he must defend another from imminent danger of death of great bodily injury. The difference between the two defenses is the reasonableness of defendant's actual belief in the need to defend another. But both defenses require defendant possess an "actual" fear of imminent harm. (<u>People v. Butler</u> (2009) 46 Cal.4th 847, 868.) Here, the court was not required to instruct on defense of another (perfect or imperfect) because there was no evidence defendant actually believed he needed to defend Rojas from imminent danger or death.

The last time Lopez was near Rojas, he told everyone to "go to hell," and that he was leaving. Defendant looked at Rojas and smiled. Rojas shook her head and rolled her eyes. Defendant and Rojas then had a brief, casual conversation about whether defendant was going to work. Defendant then said he was going to sleep. Thus the evidence of defendant's conduct during and immediately after the confrontation with Lopez does not show an actual fear of Lopez imminently harming Rojas. And, in his interview with law enforcement, defendant specifically said his fight with Lopez was not about Rojas. There was no substantial evidence to support instruction on defense of others.

2. <u>The Court Did not Prejudicially Err in Failing to Instruct on Defense of Habitation</u>

Defendant's claim the court was required to instruct on defense of habitation also fails. Defendant claims "had the jury been instructed that a person is privileged to use reasonable force to defend his home and persons therein, it is reasonably probable that the jury would have acquitted" him. But deadly force is never reasonable to protect property alone. (<u>People v. Curtis</u> (1994) 30 Cal.App.4th 1337, 1360.) "The defendant must also show either self-defense or defense of others ...." (<u>Ibid.</u>) And, as we explained above, there was no evidence to support defense of others. Thus, a defense of others theory could not support an instruction on defense of habitation.

1

2

3

> There was some evidence defendant acted in self-defense, such as his statement to police.[fn16] But, the jury was instructed on the theory of self-defense and rejected it. Thus, the failure to instruct on defense of habitation based a self-defense theory, even if erroneous, was not prejudicial because the jury necessarily rejected one of its factual predicates.

4

5

6

7

> **FN16**: We disagree with the Attorney General's assertion that "there was *no* evidence that indicated ... that appellant acted in the belief there was imminent danger to himself ...." (Italics added.) In his interview with law enforcement, defendant claimed Lopez attacked him first by lunging at him and hitting him. While the jury may not have accepted defendant's testimony, it was evidence nonetheless.

8

People v. Benitez, 2014 Cal. App. Unpub. LEXIS 1573 at 21-25.

9

### 2.   Analysis

10

Again, the only basis for federal collateral relief for instructional error is that an

11

infirm instruction or the lack of instruction by itself so infected the entire trial that the

12

resulting conviction violates due process. Estelle v. McGuire, 502 U.S. at 71-72. The

13

evidence in this case did not support defense of habitation or defense of another. The

14

victim was possibly intoxicated and harassing Petitioner's co-habitant, Rojas, there was

15

no evidence of physical threats or violent behavior on the part of the victim. The

16

testimony was consistent that the victim proceeded to leave the house, at which time

17

Petitioner followed him. The victim was no longer near Rojas when the shooting

18

occurred, and while Petitioner made statements that the victim chose to fight Petitioner

19

outside the house, there was no evidence to support a defense of habitation, as no

20

evidence was presented that the victim was attempting to enter the home or take any

21

actions against property or people present in the house. The court did instruct the jury on

22

self defense, based on Petitioner's statements that the victim stated that he wanted to

23

fight Petitioner and that the victim attacked him first. Despite the court providing the self

24

defense instruction, the jury found the killing unprovoked and convicted Petitioner of

25

murder.

26

Petitioner has not shown that he suffered any fundamental unfairness or that the

27

omission had any substantial or injurious effect or influence in determining the jury's

28

verdict. Accordingly, it will be recommended that the Court deny Petitioner's claim

1    concerning the failure to provide the jury with instructions as to defense of another or

2    defense of habitation. Accordingly, Petitioner is not entitled to federal habeas relief on

3    this claim.

4        **D.     Claim Four – Ineffective Assistance of Counsel**

5        Petitioner next contends the trial court was ineffective for failing to exclude a

6    statement that suggested that Petitioner killed someone in Mexico, that counsel had

7    failed to request complete instructions, and that counsel failed to request a limiting

8    instruction as to the evidence regarding Petitioner's interaction with Richard.

9            **1.     State Court Decision**

10       Petitioner presented this claim by way of direct appeal to the California Court of

11   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

12   appellate court and summarily denied in subsequent petition for review by the California

13   Supreme Court. (See Lodged Docs. 1-6.) Because the California Supreme Court's

14   opinion is summary in nature, this Court "looks through" that decision and presumes it

15   adopted the reasoning of the California Court of Appeal, the last state court to have

16   issued a reasoned opinion. See Ylst, 501 U.S. at 804-05.

17       In denying Petitioner's claim, the Fifth District Court of Appeal explained:

18   IV. <u>DEFENDANT HAS NOT CARRIED HIS BURDEN IN SHOWING
     INEFFECTIVE ASSISTANCE OF COUNSEL</u>

19

20   A. <u>DEFENDANT'S CLAIM</u>

21       Finally, defendant claims trial counsel was ineffective for (1) failing
     to exclude his statement "suggesting he had killed someone in Mexico";
22   (2) failing to request "complete" defense instructions; and (3) failing to
     request limiting instructions as to "other acts and offenses."

23   B. <u>ANALYSIS</u>

24       "On direct appeal, a conviction will be reversed *only* if (1) the record
     affirmatively discloses counsel had no rational tactical purpose for the
25   challenged act or omission, (2) counsel was asked for a reason and failed
     to provide one, or (3) there simply could be no satisfactory explanation."
26   (<u>People v. Mai</u> (2013) 57 Cal.4th 986, 1009, italics added.) None of
     defendant's ineffective assistance claims clear this high hurdle.

27

28       Defendant claims counsel should have moved to exclude a portion
     of his interview with law enforcement. In the interview, defendant said he

                                        23

had been a police officer in Mexico for three years before coming to the United States at age 23. Later in the interview, defendant was asked if he was ever involved in combat involving weapons and he replied, not in the United States, but he had been in Mexico. Defendant was asked whether he killed anyone in Mexico and he twice replied, "[N]o." Defendant said he wanted to "move on" from the subject and told the interviewer that he was "not going to tell" him about "that."

Thus, defendant expressly denied killing anyone in Mexico. Defendant may have created some ambiguity when he said he was "not going to tell" the interviewer about "that." But, trial counsel could have concluded that this weak, ambiguous evidence of a prior violent incident provided a more favorable explanation for why defendant always carried a gun (i.e., he had been involved in violent incidents in the past and now carried a gun for defensive, not offensive, purposes). Or, trial counsel could have believed that the jury might conclude any prior incident occurred while defendant was in the line of duty as a law enforcement officer. In sum, defendant has failed to show that "there simply could be no satisfactory explanation" for counsel to choose not to move to exclude the evidence. (People v. Mai, *supra*, 57 Cal.4th at p 1009.)

Defendant also claims trial counsel was ineffective for failing to request instructions on defense of habitation and defense of others. But, as we concluded there, the instruction on defense of others would not have been supported by substantial evidence. Because defendant was not entitled to those instructions, defense counsel may have reasonably chosen not to request them. (Cf. People v. Slaughter (2002) 27 Cal.4th 1187, 1222.) And, any error in failing to instruct on defense of habitation was not prejudicial. (See Discussion § III.B.2., *ante.*)

Finally, defendant claims trial counsel should have requested a limiting instruction regarding the evidence of defendant's altercation with Richard. Defense counsel may have reasonably concluded the risk of a limiting instruction outweighed its benefit. (See People v. Hawkins (1995) 10 Cal.4th 920, 942, abrogated on other grounds by People v. Lasko (2000) 23 Cal.4th 101.) Specifically, counsel may have wished to draw as little attention to the evidence as possible. We cannot say "there simply could be no satisfactory explanation" for defense counsel's conduct. (People v. Mai, *supra*, 57 Cal.4th at p. 1009.)

We therefore reject defendant's claims of ineffective assistance of counsel.

People v. Benitez, 2014 Cal. App. Unpub. LEXIS 1573 at 25-28.

### 2.    Legal Standard

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

1    v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's

2    performance was deficient, requiring a showing that counsel made errors so serious that

3    he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

4    Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell

5    below an objective standard of reasonableness, and must identify counsel's alleged acts

6    or omissions that were not the result of reasonable professional judgment considering

7    the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

8    (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court

9    indulges a strong presumption that counsel's conduct falls within the wide range of

10   reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington v.

11   Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

12        Second, the petitioner must demonstrate that "there is a reasonable probability

13   that, but for counsel's unprofessional errors, the result ... would have been different."

14   Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were "so serious

15   as to deprive defendant of a fair trial, a trial whose result is reliable." Id. at 687. The

16   Court must evaluate whether the entire trial was fundamentally unfair or unreliable

17   because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United

18   States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

19        A court need not determine whether counsel's performance was deficient before

20   examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

21   Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

22   deficiency that does not result in prejudice must necessarily fail. However, there are

23   certain instances which are legally presumed to result in prejudice, e.g., where there has

24   been an actual or constructive denial of the assistance of counsel or where the State has

25   interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659,

26   and n. 25 (1984).

27        As the Supreme Court reaffirmed in Harrington v. Richter, meeting the standard

28   for ineffective assistance of counsel in federal habeas is extremely difficult:

1

2            The pivotal question is whether the state court's application of the
       Strickland standard was unreasonable. This is different from asking
3      whether defense counsel's performance fell below Strickland's standard.
       Were that the inquiry, the analysis would be no different than if, for
4      example, this Court were adjudicating a Strickland claim on direct review
       of a criminal conviction in a United States district court. Under AEDPA,
5      though, it is a necessary premise that the two questions are different. For
       purposes of § 2254(d)(1), "an unreasonable application of federal law is
6      different from an incorrect application of federal law." Williams, supra, at
       410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
       deference and latitude that are not in operation when the case involves
7      review under the Strickland standard itself.

8            A state court's determination that a claim lacks merit precludes
       federal habeas relief so long as "fairminded jurists could disagree" on the
9      correctness of the state court's decision. Yarborough v. Alvarado, 541
       U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
10     Court has explained, "[E]valuating whether a rule application was
       unreasonable requires considering the rule's specificity. The more general
11     the rule, the more leeway courts have in reaching outcomes in case-by-
       case determinations." Ibid. "[I]t is not an unreasonable application of
12     clearly established Federal law for a state court to decline to apply a
       specific legal rule that has not been squarely established by this Court."
13     Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed.
       2d 251, 261 (2009) (internal quotation marks omitted).

14 Harrington v. Richter, 131 S. Ct. at 785-86.

15     "It bears repeating that even a strong case for relief does not mean the state

16 court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §

17 2254(d) stops short of imposing a complete bar on federal court relitigation of claims

18 already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

19 from a federal court, a state prisoner must show that the state court's ruling on the claim

20 being presented in federal court was so lacking in justification that there was an error

21 well understood and comprehended in existing law beyond any possibility for fairminded

22 disagreement." Id. at 786-87.

23     Accordingly, even if Petitioner presents a strong case of ineffective assistance of

24 counsel, this Court may only grant relief if no fairminded jurist could agree on the

25 correctness of the state court decision.

26          **3.    Analysis**

27     Petitioner contends that counsel was ineffective by failing (1) to exclude

28 Petitioner's statement suggesting he had killed someone in Mexico, (2) failing to request

defense instructions, and (3) for failing to request limiting instructions as to Petitioner's altercation with Richard. The Court will address each in turn.

### a.    Killing in Mexico

Petitioner made comments during his interview that he wanted to move on from questioning whether had killed anyone after admitting he had been in combat as a police officer in Mexico. Petitioner never admitted to killing anyone, and moreover expressly denied killing anyone, prior to attempting to change the topic of the conversation. As the state court found, the testimony might have raised some ambiguity as to Petitioner's conduct, but it also could have been considered as favorable evidence by defense counsel. It is possible the testimony indicated that Petitioner had killed someone in the line of duty as a police officer, or, alternatively, it could have provided an explanation why Petitioner would carry a gun on his person for protection.

The state court was not unreasonable in denying the claim. The evidence was not necessarily harmful, and as explained, could have even been beneficial to Petitioner's case to show that Petitioner had previous law enforcement experience and had a rational reason to carry a firearm after being involved in combat situation. The state court's decision was reasonable. Petitioner's arguments that the evidence was prejudicial are relatively weak, and Petitioner provides no argument to undermine the potential benefit provided by the testimony.

Petitioner has not shown that counsel's conduct fell below an objective standard of reasonableness, or that he was prejudiced by counsel's conduct. The evidence, if harmful to Petitioner, was marginally so, and as explained could have actually bee beneficial to Petitioner. Counsel was not ineffective for attempting to exclude it, and regardless, Petitioner has not shown that he was prejudiced by its admission.

The arguments or theories that could have supported the state court's decision rejecting Petitioner's claim of ineffective assistance of counsel are not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.

1    Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

2                           **b.      Failure to Request Instructions**

3         Petitioner next asserts that counsel was ineffective for failing to request instruction

4    on defense of others and defense of habitation. As previously described with regard to

5    the instructional error claim, there was not substantial evidence, if any evidence at all, to

6    support those defenses. At trial Petitioner presented evidence of self-defense and the

7    jury was instructed on that defense, but still found him guilty. Counsel was not ineffective

8    for failing to request instruction for which there was no factual support. Moreover,

9    Petitioner has not shown prejudice, as if a jury did not find that he acted in self-defense

10   there was even less of a possibility that a jury would find that he acted in the defense of

11   others or in the defense of habitation.

12        Petitioner has not shown that counsel was ineffective, or that he was prejudiced

13   by the failure to request the defense instructions. The state court's decision rejecting

14   Petitioner's claim of ineffective assistance of counsel was not "lacking in justification that

15   there was an error well understood and comprehended in existing law beyond any

16   possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87. Petitioner is not

17   entitled to federal habeas relief.

18                     **c.      Limiting Instruction as to Dispute with Richard**

19        Petitioner, in his final claim for ineffective assistance of counsel, claims that

20   counsel was ineffective in requesting a limiting instruction with regard to his dispute and

21   threats made to Richard. The state court, in reviewing the claim, found that counsel was

22   not ineffective and may have decided not pursue the instruction as to not draw further

23   attention to the testimony. Even assuming that Petitioner's counsel was ineffective for

24   failing to request the instruction, Petitioner has not shown that he was prejudiced by the

25   action. There was significant evidence presented of Petitioner's guilt in the case, and

26   even if the instruction was given, the jury would have still been presented the evidence,

27   but instructed only to consider it for its impeachment purposes.

28        The state court correctly found that Petitioner has not shown that counsel's

conduct fell below an objective standard of reasonableness, or that he was prejudiced by counsel's conduct. The state court's decision rejecting Petitioner's claim was reasonable. <u>Richter</u>, 131 S. Ct. at 786-87. Accordingly, Petitioner is not entitled to federal habeas relief with regard to his ineffective assistance of counsel claims. The Court recommends that the claims be denied.

**IV.   Recommendation**

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   January 17, 2017                    /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE